## FOOTE *v.* WALKER et al.

Under the act of 1870 (p. 69, Sess. Laws), and the act of 1874 (p. 67, Sess Laws), making the first named act applicable to the county of Rio Grande, *all* appeals from justices of the peace in that county should be taken to the probate court.

### *Appeal from District Court of Rio Grande County.*

FOOTE brought unlawful detainer against Walker and another, before a justice of the peace of Rio Grande county, and prevailed. The defendants perfected an appeal to the district court. At the August term, 1876, Foote moved to dismiss this appeal, asserting as the ground of his motion, that no appeal lay to that court. The motion was denied, and this is assigned for error.

Mr. M. S. TAYLOR, for appellant.

Mr. V. D. MARKHAM, for appellees.

WELLS, J. Section 8 of the act of February 9, A. D. 1870 (acts 8th Sess., p. 69), regulating the civil jurisdiction of the probate court of Arapahoe county, provided that all appeals from the judgments of justices of the peace in that county should be taken to the probate court. The act of February 10th, 1874 (acts 10th Sess., p. 67), made this act applicable to the county of Rio Grande. The jurisdiction conferred by the former act was in the beginning exclusive, and as to the county of Arapahoe, certainly deprived the district court of jurisdiction to entertain these appeals. *Farley* v. *The People* (*ante*, p. 65).

But intermediate the two acts quoted, the act of February 9, A. D. 1872 (acts 9th Sess. 100, § 4), had provided in general terms that thereafter in all cases of forcible entry and unlawful detainer, or unlawful detainer of lands tried and determined before any justice of the peace, either party might appeal to the district court of the proper county. This act was of course from the date of its approval of

effect within all the territory afterward erected into the county of Rio Grande, and so remains to this day, unless limited in its operation by the act of 1870. But the act of 1870 was itself, it is said, modified by the act of 1872, as to the class of cases designated in the latter act, so that in Rio Grande, after its adoption there, as in Arapahoe before, the appeal lay either to the probate or to the district court.

The precise question presented is, therefore, whether by the act of 1872 it was the purpose of the legislature to deprive the probate court of Arapahoe county of the exclusive jurisdiction which it before possessed, of appeals from the judgments of justices of the peace within that county, and to give an appeal in the action of forcible entry and detainer, and unlawful detainer from justices of the peace to the district court. The answer to this question must be in the negative.

Without laying special stress upon the general doctrine that repeals by implication are regarded with disfavor; or to the other doctrine that special statutes shall, in the absence of negative words, prevail over general statutes even though subsequent in point of time ; which last doctrine is perhaps scarcely applicable here, inasmuch as both statutes are in a sense special ; let us consider what was the controlling purpose in the instance of the two enactments. This, it is conceived, is the true criterion. For the former having prescribed special regulations as to a particular matter, the latter ought not to be held to abrogate these, if the legislative mind appears not to have been directed to them. Now, in the enactment of 1870, the animating purpose was to effect such a distribution of the judicial powers within the county of Arapahoe, as should promote dispatch in the business of the courts ; and enable those ministering therein to accomplish, so far as might be, their function of according justice to all, promptly and without delay.

In the preceding sections of the act the legislature had enlarged the jurisdiction of the court in civil causes to the utmost limit of their power under the Organic Act, and in the section in question, they direct all appeals to the in-

ferior court with the double purpose : 1st, to relieve the
district court of the small causes, which before that had too
often engrossed the attention of that court to the neglect of
more considerable matters ; and 2d, to afford a more speedy
trial of these lesser causes and thus diminish the tempta-
tion to litigious appeals, or appeals for delay merely. This,
as pertaining to the history of the legislation of the Terri-
tory, it is supposed, we may judicially notice. But if we
are not at liberty to look beyond the face of the statute for
the purpose which dictated it, the same conclusion is inevi-
table ; for to say otherwise is to say that while affecting to
employ themselves in regulating and disposing the jurisdic-
tion of the several courts, the legislature were in fact con-
triving to put money into the pockets of a particular official.
It is impossible to impute motives so unworthy.

Now in the act of 1872 the main design would seem to
have been, 1st, to enlarge the time of perfecting the appeal
from judgments given in the action of unlawful detainer ;
2d, to prescribe a rule by which the penalty of the appeal
bond should be ascertained, and 3d, to set a limit to the
amount of such penalty, beyond which the magistrate
should not pass.

By the Revised Statutes, chap. 35, § 5, which was before
the rule, the appeal was required to be perfected within
five days. The act of 1872 enlarged this period to ten days.
The Revised Statutes required bond for the payment of the
rents accrued, and double rents accruing subsequent to the
bringing of the action ; and the act of 1872 contains the
same requirement. The former, however, omitted to pre-
scribe any rule by which the court or justice should ascer-
tain the penalty of the bond, and left it discretionary to de-
mand bond in whatever sum caprice might suggest. These
several defects in the Revised Statutes are corrected by the
act under consideration ; and while by a liberal construc-
tion it is possible to say that the legislative purpose in-
cluded not only the amendment of the defects of the stat-
ute in the respects adverted to, but also the abridging the
jurisdiction of the Arapahoe probate court in the matter of

appeals, we think the better view must limit the statute to the former purpose alone ; for it would seem that if they had regarded the jurisdiction of the probate court as inconveniently large, the remedy would have been afforded in a statute directed expressly to the correction of this inconvenience ; and if, in the opinion of the assembly, experience had shown the probate court of Arapahoe county to be an unworthy depository of the jurisdiction over this particular class of cases, it is improbable that original jurisdiction thereof would have still been continued. From the light which the statute affords, therefore, it seems that in the enactment of the act of 1872, the legislative attention was not drawn to the jurisdiction of the Arapahoe probate court ; and that no purpose was entertained to abbreviate that jurisdiction as it then and thereafter existed. After this statute, therefore, the act of 1870 retained the same effect which it had possessed before ; appeal from all judgments of justices of the peace in that county, as well in the action of unlawful detainer as in other actions, lay to the probate, and not to the district court ; and the statute being transported to the county of Rio Grande with the same effect, took away the appeal to the district court, which in that county the act of 1872 had previously given.

The judgment of the district court is therefore reversed, and the cause will be remanded with directions to the district court to dismiss the appeal, and award *procedendo* to the justice of the peace having jurisdiction, to enforce the judgment from which the appeal was taken. Appellant to recover costs.

*Reversed.*